IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTOPHER A. WATKINS, S12114,

       Petitioner,

v.                                Case No. 3:19-CV-01106-NJR

ALEX JONES,

       Respondent.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner Christopher Watkins, an inmate in the Illinois Department of Corrections, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a Response to the Petition (Doc. 11). For the reasons stated herein, Petitioner Watkins's Section 2254 Petition will be denied.

### RELEVANT FACTS AND PROCEDURAL HISTORY

### I.   State Trial Proceedings

This Court's summary of the facts is derived from the detailed description provided by the Illinois Appellate Court, Fifth District, in its Rule 23 Orders affirming Watkins's conviction on direct appeal and affirming the dismissal of his postconviction petition. *People v. Watkins*, 2014 IL App (5th) 110549-U; *People v. Watkins*, 2019 IL App (5th) 150387-U, (Docs. 12-3 and 12-8).[1] The state court's factual findings are presumed to be correct unless

---

[1] Citations in this Order are to the document, exhibit, and page numbers assigned by the Case Management/Electronic Case Filing ("CM/ECF") system. Unless otherwise specified, all exhibits referred to are attached to Doc. 12.

rebutted by clear and convincing evidence, which Watkins has not done. 28 U.S.C. § 2254(e).

Randy Farrar was found dead at the bottom of the basement steps in his home on July 5, 2006. Detective John Kemp of the Jefferson County Sheriff's Department investigated the death. Two shell casings from a .380-caliber firearm were found near Farrar's body. The master bedroom was in disarray, and a drawer was lying on the floor. The drawer contained items related to a Walther PPK .380 pistol. On the nightstand, Detective Kemp found a note that read, "Susan 244-0536." (Doc. 12-3, pp. 2-3). The phone number on the post-it note was traced to Gwendolyn Jones, who was the mother of Christopher Watkins and Demetrius Cole ("Cole"). No physical evidence connected Watkins to the scene. (*Id*. at p. 3).

"On July 11, 2006, police got a major break in the case when Gwen Jones called Detective Kemp." (*Id*.). According to Jones (Watkins's mother), Watkins told her that he and Cole were at Farrar's house and that Cole shot Farrar. (*Id*.). Jones brought Watkins to Detective Kemp's office. (*Id*.). Detective Kemp interviewed Watkins, recorded a portion, and released Watkins. (*Id*.).

Watkins's first recorded statement included the following facts:

1) Cole offered Watkins money to drive him and Cole's girlfriend, Krysta Donoho ("Donoho"), to a house;

2) Watkins saw Donoho run around crying and that Cole was involved in a scuffle with a man;

3) Watkins heard gunshots and ran back outside;

4) Cole ran outside the house carrying a gun;

5) Cole threatened Watkins that if he "snitched," then he would kill him too;

6) Watkins dropped Cole and Donoho off at the Mt. Vernon Wal-Mart; and

7) Cole called him and told that he was going back to the man's house.

(*Id.*).

Detective Kemp also interviewed Chandra Jones[2] ("Chandra") about the events. After hearing Chandra's version, Detective Kemp again questioned Watkins. During the second interview, Kemp confronted Watkins with Chandra's version, and Watkins recanted his earlier statement. (*Id.* at p. 5). Watkins told Kemp he wanted to accept responsibility for his part of the events, but reiterated that he was not the person who shot Farrar. Watkins also admitted that he, his brother, Donoho, and Chandra went back to the house later that night to remove an item that they thought contained fingerprints. (*Id.* at p. 6).

At trial, Chandra testified that in early July 2006, she, Donoho, Watkins, and Cole drove in a white sport utility vehicle to a Casey's General Store, where Donoho made a phone call. (*Id.* at p. 7). They then drove to Farrar's house. (*Id.*). Chandra and Donoho went to the door. Donoho went into the house, and Chandra went back to the vehicle.

Chandra testified that she stayed in the vehicle and saw what happened through the front window of the house. (*Id.*). She saw Cole and Watkins fighting with Farrar. (*Id.*). Chandra said that Watkins returned to the vehicle with a roll of money. (*Id.*). According to Chandra, Watkins then went back inside the house, and she heard a gunshot. (*Id.*). Chandra said that Donoho was then standing in the doorway of the house and screamed. (*Id.* at p. 8). Then Chandra heard another gunshot. (*Id.*). The group then drove to a Sonic, Wal-Mart, Circle K, and McDonald's. (*Id.*).

Additionally, Amanda Jamison ("Jamison") and Tanya Melton ("Melton") testified at

---

[2] Chandra, who was 16 years old at the time and was no relation to Gwendolyn Jones, had only recently met the others. Ultimately, the investigation established that Watkins, Cole, Donoho, and Chandra were present at the scene of Farrar's death.

trial. (*Id*.). Melton said that she had a casual sexual relationship with Watkins. (*Id*.). Jamison and Melton testified that on July 2, 2006, Watkins, Cole, and Donoho went to Jamison's apartment for a ride. (*Id*.). Melton and Jamison took the group to Casey's General Store for Donoho to use a payphone. (*Id*.).[3] Then the group went back to the house. (*Id*.). Watkins, Cole, and Donoho exited the vehicle and went into the back of the house. (*Id*.). When Watkins, Cole, and Donoho came back to the vehicle, Donoho was carrying something. (*Id*. at pp. 8-9).

Watkins did not testify at trial. (*Id*. at p. 9). The trial court denied his motion for a directed verdict (*Id*.) and instructed "the jurors that in order to find the defendant guilty of first-degree murder, they needed to find him guilty of robbery." (*Id*.). The court also instructed the jurors that to find Watkins guilty of robbery, "they needed to conclude that he did not act under compulsion-that [Watkins] did not act under threat of imminent death or harm in committing the acts with which the State charged him." (*Id*.).

The jury found Watkins guilty of both robbery and first-degree murder. (*Id*.). At sentencing, Watkins asked the Farrar family for forgiveness, and noted that he was under the influence at the time of the crime. (*Id*.).

The trial court vacated the robbery conviction. (*Id*. at p. 10). The trial court then sentenced Watkins to 45 years in prison noting that the murder had been planned and Watkins could have backed out of the plan at any time. (*Id*.). The court also noted that video surveillance from McDonald's showed his actions did not demonstrate remorseful behavior. (*Id*.).

Defendant's posttrial motions were denied.

---

[3] Detective Kemp testified that phone records and Casey's surveillance system reflect that Donoho made a call on July 2, 2006, from Casey's payphone to Farrar's home phone.

## II.  Direct Appeal

On direct appeal, Watkins argued the following:

1)  His trial was unfair because:

   a)  Defense counsel was not allowed to "thoroughly impeach" Chandra;

   b)  Kemp was permitted to speculate and testify to hearsay statements; and

   c)  the prosecution erred in closing arguments.

2)  Trial counsel was ineffective for failing to preserve those claims;

3)  The jury was not properly instructed on hearsay or the definition of "knowing;" and

4)  His 45-year sentence was excessive.

(Doc. 12-1, pp. 2-4). The Illinois Appellate Court, Fifth District, held that Watkins's unfair trial claims were forfeited, and he was not denied effective assistance of counsel. (Doc. 12-3). It also found that Watkins's challenge to the trial court's jury instructions were forfeited and that Watkins's sentence was not excessive under Illinois law. (*Id*.).

Watkins then filed a petition for leave to appeal (PLA) to the Illinois Supreme Court raising the same claims as on appeal. (Doc. 12-4). On September 24, 2014, the Illinois Supreme Court denied Watkins's PLA. (*Id*.).

## III. Postconviction Petition

On May 14, 2015, Watkins filed a postconviction petition alleging:

1)  trial counsel was ineffective for failing to interview and call as a witness, Tishann Dorsey;

2)  trial counsel was ineffective by not being at the crime scene when the Kemp took Chandra to the scene to verify what she saw;

3)  trial counsel failed to put Todd Ringle on the stand to show that the prosecutor was coercing the key witness to falsify the statements of the actual truth;

4) trial counsel failed "to get a D.N.A. forensic analysis to counter question the key witness statements[;]"

5) trial counsel failed to object when the state speculated how Watkins blocked the victim from escaping out of the kitchen;

6) prosecutorial misconduct;

7) judicial misconduct;

8) officer misconduct;

9) the charge of first-degree murder was inadequate;

10) the charge of felony murder was inaccurate; and

11) Watkins's sentence was excessive

(Doc. 12-12, pp. 47-52). The trial court dismissed the petition. (*Id.* at pp. 60-64). On appeal, Watkins only raised the issue as to whether trial counsel was ineffective "for failing to interview and call as a witness who would have testified that one of the co-defendants had informed the witness that defendant did not participate in the robbery and killing of the victim." (Doc. 12-5, p. 5). The Illinois Appellate Court, Fifth District, "[found] that the trial court's summary dismissal of [Watkins's] postconviction petition was correct and must be affirmed." (Doc. 12-8, p. 4). The appellate court acknowledged that "[w]ithout the [witness's] affidavit or even a copy of [witness's] letter, the 'reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant, and further review of the claim is unnecessary.'" (*Id.*) (quoting *People v. Enis*, 743 N.E.2d 1, 13 (Ill. 2000)). On September 25, 2019, the Illinois Supreme Court denied Watkins's PLA. (Doc. 12-9).

This habeas corpus action followed.

LAW APPLICABLE TO SECTION 2254 PETITION

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Habeas is *not* merely another round of appellate review. 28 U.S.C. § 2254(d) restricts habeas relief to cases where the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman*, 690 F.3d at 814 (quoting *Williams*, 529 U.S. at 407).

Federal habeas review serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). The Supreme Court has repeatedly emphasized that the

Section 2254(d) standard "is intentionally 'difficult to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), and *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).

Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "A state court's decision is reasonable, even if incorrect in our independent judgment, so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017) (internal citations omitted). For habeas relief to be granted, the state court's application of federal precedent must have been "objectively unreasonable," meaning "something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (internal citations omitted).

Respondent concedes that Watkins's Petition is timely filed (Doc. 11, p. 6) but asserts that several of his claims are unexhausted and procedurally defaulted. (*Id*. at pp. 7, 11-12).

DISCUSSION

## I.   *Claims One, Three, Four, Five and Six are Procedurally Defaulted*

"A § 2254 claim can be procedurally defaulted in two ways." *Romero v. Varga*, 2022 WL 4483798, at *7 (N.D. Ill. Sept. 27, 2022). The first occurs when a petitioner fails to bring his or her claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair

opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also* 28 U.S.C. § 2254(c). Under the Illinois two-tiered appeals process, habeas petitioners must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review. *Id.*

The second way arises out of the "independent and adequate state ground doctrine." *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016) (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)). "In the context of federal habeas corpus, the doctrine applies to preclude review where the state courts declined to address a petitioner's federal claims because the petitioner did not meet state procedural requirements." *Id.* (citing *Coleman*, 501 U.S. at 729-30). "In those cases, the state court judgment rests on an independent and adequate state ground, and principles of comity and federalism dictate against upending the state-court conviction, and instead, finding that the petitioner's claim is procedurally defaulted." *Id.* (citing *Coleman*, 501 U.S. at 729-30).

A. *Claims One, Three, and Four Were Forfeited*

"Illinois law requires a convicted defendant to include any and all claims of error in a post-trial motion for a new trial." *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005) (citing 725 ILCS 5/116-1; *People v. Enoch*, 522 N.E.2d 1124, 1129-30 (Ill. 1988)). The failure to bring a claim of error in a post-trial motion amounts to forfeiture. "A finding of [forfeiture] by the state postconviction court is enough to establish an adequate and independent state ground." *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) (citing *Daniels v. Knight*, 476 F.3d 426, 431 (7th Cir. 2007)).

Watkins's first claim—being denied a fair trial because he was not allowed to "thoroughly impeach" Chandra—was not raised in a posttrial motion. (Doc. 12-3, p. 10). The appellate court considered the claim forfeited and reviewed the claim for plain error. (*Id*. at pp. 10-12).

Watkins's third claim—that the State's closing argument was improper—was not objected to at trial. *See Enoch*, 522 N.E.2d at 1130 ("Both a *trial objection* and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial") (emphasis added). Not only did the appellate court note as such, but also Watkins "[did] not argue in what way that argument actually prejudiced him." (Doc. 12-3, pp. 17-18). Despite Watkins failing to argue prejudice, the appellate court analyzed the issue and did "not agree that the statement that the defendant had three different women 'lined up' was prejudicial in light of the evidence to that effect at trial." (*Id*. at p. 18). The appellate court also analyzed the issue of the State's description of Watkins's cockiness and "disagree[d] that this statement was not fair commentary on the evidence heard and seen by the jury." (*Id*.).

Watkins's fourth claim—that he was denied a fair trial when the trial court refused to give a limiting instruction on hearsay and a jury instruction defining the word "knowing"—was neither reasserted at the end of trial nor raised in a posttrial motion. The appellate court considered the claim forfeited and reviewed the claim for plain error. (*Id*. at pp. 20-26).[4]

---

[4] Respondent also correctly notes that Watkins's fourth claim is based on state law and cannot be considered here. 28 U.S.C. §2254 affords habeas relief only where a petitioner's custody violates *federal* law. *See Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011) (acknowledging that "[w]e have stated many times that 'federal habeas corpus relief does not lie for errors of state law'") (quoting *Estelle v. McGuire*, 112 S. Ct. 475, 480 (1991)).

Watkins asserts no additional arguments regarding cause and prejudice, and the Court's review of the record does not reveal prejudice or a fundamental miscarriage of justice. Thus, the Court finds Watkins's first, third, and fourth claims are procedurally defaulted.

### B.  Claim Five Was Never Raised in State Court

Watkins's fifth claim—that the trial court abused its discretion in violation of the Eighth Amendment when it sentenced him to a 45-year prison sentence—was never raised in state court. On direct appeal, Watkins alleged that his sentence violated the Illinois Constitution and was excessive under state law. (Doc. 12-1). Watkins failed to alert the Illinois Appellate Court of a federal constitutional claim. Accordingly, claim five is procedurally defaulted because it was not raised in one full round of state review. *Boerckel*, 526 U.S. at 845.[5]

### C.  Claim Six Was Rejected Because No Affidavit from the Proposed Witness Was Filed

Watkins's sixth claim—trial counsel was ineffective for failing to investigate and call Tishann Dorsey as a witness—was rejected on an independent and adequate state law ground. Under Illinois law, "[a] claim that trial counsel failed to investigate and call a witness must be supported by an affidavit from the proposed witness." *People v. Enis*, 743 N.E.2d 1, 13 (Ill. 2000) (citing *People v. Johnson*, 700 N.E.2d 996, 1004 (Ill. 1998); *People v. Thompkins*, 641 N.E.2d 371, 378 (Ill. 1994)).

---

[5] Besides being procedurally defaulted, Watkins's sentencing claim is not cognizable. Watkins's sentence is within the range established by Illinois law. *See Conley v. Gilmore*, 25 F.3d 1053 (7th Cir. 1994) (noting that "the severity of a sentence is not sufficient grounds for habeas corpus relief when the sentence is within the range prescribed by statute") (citing *United States ex rel. Sluder v. Brantley*, 454 F.2d 1266, 1269 (7th Cir. 1972)). Watkins was convicted of first degree murder and was sentenced to a 45 year prison term. Under 730 Ill. Comp. Stat. 5/5-4.5-20, "[i]mprisonment shall be for a determinate term, subject to Section 5-4.5-115 of this Code, of (1) not less than 20 years and not more than 60 years; (2) not less than 60 years and not more than 100 years when an extended term is imposed under Section 5-8-2 (730 ILCS 5/5-8-2); or (3) natural life as provided in Section 5-8-1 (730 ILCS 5/5-8-1)."

The Illinois affidavit requirement is an independent and adequate state ground, which bars habeas review in federal court. *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012). Here, the state court reasonably noted that "[w]ithout the affidavit or even a copy of Dorsey's letter, the 'reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant, and further review of the claim is unnecessary.'" (Doc. 12-8, p. 4) (quoting *Enis*, 743 N.E.2d at 13)). Thus, the state court "[found] that the trial court's summary dismissal of defendant's postconviction petition was correct and must be affirmed." (*Id*.). Additionally, the state court reasonably concluded that "even if defendant's trial counsel was ineffective, defendant was not arguably prejudiced." (*Id*.).

## II.    Claim Two

In claim two, Watkins argues his trial counsel "[failed] to object [to] speculation and hearsay statements made by Det. Kemp denying petitioner the right to fair trial in violation of petitioner's Sixth, Fifth, and Fourteenth Amendments to the U.S.C." (Doc. 1, p. 24). Specifically, Watkins asserts:

> Det. Kemp testified that surveillance video from Casey's General Store on Route 37 North showed Donoho making a phone call to Farrar's house about 11:30 am, the day after Farrar was killed. Then he speculated that the reason for Donoho calling the next day was to check to see if anybody was alive or the police was there. He later testified that two other witnesses changed their names as a result of this case. Lastly, Kemp was allowed to testify over the objection of defense counsel that petitioner's mother contacted law enforcement and told them that Watkins was present when Cole shot and killed Randy Farrar, according to petitioner.

(*Id*.).

A claim of ineffective assistance of counsel must be analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). Analysis under *Strickland* and on habeas review under

Section 2254 are both highly deferential. Where the state court has decided an ineffective assistance claim, the review is "doubly" deferential. *Harrington*, 562 U.S. at 105. And because *Strickland* sets forth a general standard, "the range of reasonable applications is substantial." *Id.*

In order to show ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong"). *Strickland*, 466 U.S. at 687-88. A petitioner must satisfy both prongs to be eligible for habeas relief. There is no mandatory order for the analysis, and a habeas court is not required to address both prongs if the petitioner has failed to make a sufficient showing on one. *Id.* at 697.

The question for this Court is not whether it believes counsel was ineffective, but rather, whether the state court's adjudication of the matter was an unreasonable application of *Strickland*. *Harrington*, 562 U.S. at 101. Section 2254, as amended by AEDPA, "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further." *Id.* at 102. As the Seventh Circuit has observed, "the bar for establishing the unreasonableness of a state court's application of *Strickland* 'is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus.'" *Jones v. Brown*, 756 F.3d 1000, 1007 (7th Cir. 2014) (quoting *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009)).

On appeal, Watkins argued that "[c]ounsel's performance in failing to object to Kemp's misstatements, improper speculation, and hearsay, or to the prosecutor's misstatement of evidence was clearly unreasonable and ineffective." (Doc. 12-1, p. 29).

Watkins noted that the prosecutor commented that he was a bad person—and "[a]ny reasonable attorney would have objected to these errors." (*Id*.).

The appellate court disagreed, holding that "even if we proceeded under an assumption that counsel's performance was unreasonable and ineffective, there is absolutely no probability that the jury would have acquitted him but for these 'errors.'" (Doc. 12-3, p. 19). The appellate court analysis included the following:

> The defendant acknowledged his direct involvement in the crime. He also acknowledged his participation in the follow-up visits to Farrar's home to remove any physical evidence linking him, Cole, and Donoho to the crime scene. Whatever the motives were on the night of the crime, the night ended with the murder of a man. The defendant's involvement clearly met the elements of the crimes charged. We conclude that the defendant has failed to meet the standards required in *Strickland* and therefore has not established that his attorney provided him ineffective assistance.

(*Id*. at pp. 19-20).

Based on a review of the record, Watkins fails to show that he was prejudiced by trial counsel's ineffective assistance of counsel, and the appellate court did not misapply *Strickland*.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, no reasonable jurist would find it debatable whether this Court's rulings were correct. Accordingly, the Court denies a certificate of appealability. Watkins may reapply for a certificate of appealability to the United States Court of Appeals, Seventh Circuit. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1).

## CONCLUSION

For the reasons set forth above, Christopher Watkins's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1) is **DENIED**. This entire action is **DISMISSED with prejudice**. The Clerk of Court shall enter judgment accordingly.

If Watkins wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court *within 30 days* of the entry of judgment. FED. R. APP. P. 4(a)(1(A). A motion for leave to appeal in forma pauperis ("IFP") must set forth the issues Watkins plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Watkins does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999).

A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). The motion *must* be filed within *28 days* of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)

("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Watkins showing excusable neglect or good cause.

IT IS SO ORDERED.

DATED: January 13, 2023

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**